## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| **JEANNE PAGANO and DANA NORRIS,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> **QUICKEN LOANS INC.,** a Michigan corporation, <br><br> *Defendant.* | CASE No. 3:18-cv-117-J-20JBT <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> *2018 JAN 18 AM 10:51 FILED* |

## CLASS ACTION COMPLAINT

Plaintiff Jeanne Pagano ("Plaintiff Pagano" or "Pagano") and Plaintiff Dana Norris ("Plaintiff Norris" or "Norris") bring this class action against Defendant Quicken Loans Inc. ("Defendant" or "Quicken Loans") to stop Defendant's practice of placing unsolicited autodialed telephone calls to the cellular telephones of consumers nationwide and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.    Defendant Quicken Loans is one of the largest mortgage lending companies in the United States.  It serves consumers by relying on whole-sale funding and the use of online applications rather than a traditional branch system.

1

2.     To promote its mortgage-lending services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features unsolicited autodialed telephone calls to consumers' cellular telephones and landlines, including those that appear on the National Do Not Call Registry, without consent, and in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

3.     By making the autodialed telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, annoyance, and nuisance and invasions of privacy that result from the receipt of such calls in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiffs' and the other Class members' use and enjoyment of their cellular telephones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular data and minutes.

4.     The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs file the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

### PARTIES

5.     Plaintiff Jeanne Pagano is a natural person and citizen of the State of Florida residing in the City of Palm Coast.

6.     Plaintiff Dana Norris is a natural person and citizen of the State of California residing in the City of Rancho Cucamonga.

7.     Defendant Quicken Loans is a corporation organized and existing under the laws of the State of Michigan with headquarters located at 1050 Woodward Ave., Detroit, Michigan 48226.

## JURISDICTION AND VENUE

8.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

9.     The Court has personal jurisdiction over Defendant because it solicits significant business in this District, the calls at issue were directed to and received in this District, and the unlawful conduct alleged in this Complaint occurred in and/or was directed to this District.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and the causes of action arose, in substantial part, in this District. Venue is additionally proper as Plaintiff Pagano resides in this District.

## COMMON FACTUAL ALLEGATIONS

11.    As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires *"prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

12.    In violation of this rule, Defendant fails to obtain prior express written consent to make autodialed telemarketing calls to cellular telephone numbers.

3

13.     Consumer complaints about Defendant's invasive calls are legion. As a sample,

consumers have complained as follows:

- Quicken Loans has been sending unsolicited emails & now making unsolicited telemarketing calls supposedly "following up" on a request for loan information. A request for such information has NEVER been made.  Looking at the other 5 pages of complaints made against this company looks like they're a sham organization.[1]

- When I pick up the I get hung up on.  When I call back I receive a fast busy signal or it disconnects so I am unable to talk with anyone to find out what the call is about.  I would like it to stop.[2]

- This is the second time they have called, when we answer the phone no one answers![3]

- Robocall from Quicken Loans![4]

- Received call several times a day.  It's very annoying.[5]

- Calls 9-10 times a day looking for someone names Cruz.  I finally answered and told him that he had the wrong number and asked that he stop calling me.  He asked me what my name was and if I was interested in a home loan.  I said no, that I was not giving him my name and aksed again that he stop calling me.  He called me a [***] and hung up.  Classy.[6]

- Left no message.  Hung up as soon as answering service kicked in.  Sure sign of an autodialer.  Blocked.[7]

- [***] CALLING CONSTANTLY … HOW CAN THIS BE STOPPED ON CELL PHONES?[8]

---

[1] *Id.*

[2] http://www.callsreported.com/8002519080.calls.reported.

[3] *Id.*

[4] http://callsreported.com/6048411954.calls.reported.

[5] *Id.*

[6] http://800notes.com/Phone.aspx/1-800-251-9080/4.

[7] http://800notes.com/Phone.aspx/1-800-251-9080/5.

[8] *Id.*

- Harassing calls from Mortgage brokers.[9]

- I get calls every hour from this number. As others have stated, I don't want to do business with a company that harasses people this way. I set up my cell phone to block the number and another number they call from. I'm hoping it will work. Why do they think this is a good way to get business??[10]

- Yep ... Quicken Loans ... keep on calling and calling.[11]

14.    In placing the calls that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS") in violation of the TCPA. Specifically, the hardware and software used by Defendant has the present capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

15.    In fact, Defendant advertises its use of automated dialing technology on its own website, as shown below.[12] In pertinent part, it reads: "You also expressly consent to having Quicken Loans, our Family of Companies, and potentially our mortgage partners contact you about your inquiry by text message or phone (*including automatic telephone dialing system or an artificial or prerecorded voice* ) ... (emphasis added).

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] https://www.quickenloans.com/online-mortgage-application/apply-now.

*Product available on Fixed Rate Conventional Products only. No FHA, VA or Jumbo Products. No State Restrictions.

**Communication Consent:**
By submitting your contact information you agree to our Terms of Use and our Security and Privacy Policy. You also expressly consent to having Quicken Loans, our Family of Companies, and potentially our mortgage partners contact you about your inquiry by text message or phone (including automatic telephone dialing system or an artificial or prerecorded voice) to the residential or cellular telephone number you have provided, even if that telephone number is on a corporate, state, or national Do Not Call Registry. You do not have to agree to receive such calls or messages as a condition of getting any services from Quicken Loans or its affiliates. By communicating with us by phone, you consent to calls being recorded and monitored.

⊡ Quicken Loans HARP Disclaimer

⊡ J.D. Power Disclaimer

16.     Another website highlights Defendant's use of an ATDS by displaying comments of Defendant's former employees as shown below.[13]

So what do you do all day? You sit on an auto dialer and make 600 calls a day every day, no excuses. All your phone calls are listened to and scrutinized by your manager.

17.     Additionally, Defendant calls customers who have no "established business relationship" with Defendant and who are registered on the Do Not Call Registry.

18.     When placing these calls to consumers, Defendant failed to obtain appropriate prior express written consent as required by the TCPA from cellular telephone owners/users to make such calls.

19.     Defendant knowingly made (and continues to make) telemarketing calls without the prior express written consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFF JEANNE PAGANO

20.     On April 2, 2015, Plaintiff's cellular telephone number was registered on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls.

21.     On or about June of 2017, Plaintiff received a series of unwanted telemarketing

---

[13] https://webcache.googleusercontent.com/search?q=cache:5cq6sLGUuU0J:https://www.glassdoor.ca/Reviews/Employee-Review-Quicken-Loans-RVW1964500.htm+&cd=23&hl=en&ct=clnk&gl=il.

calls from Quicken Loans from telephone numbers 855-909-2274 and 800-251-9080.[14]

22.     Plaintiff received a call on June 10, 2017 at 1:03 p.m. from Quicken Loans but did not answer.

23.     Plaintiff received a call approximately two hours later at 3:16 p.m. and answered the phone to find out who was placing these unwanted calls. Quicken Loan's representative asked to speak to Plaintiff's late husband Joe and explained it was responding to his inquiry. Joe passed away in April of 2017 and he was not looking for a mortgage, or refinancing prior to the time of his death.

24.     Plaintiff then informed the agent that her husband had died and that she wanted the calls to stop.

25.     Despite Plaintiff's request for the calls to stop, she received another auto-dialed call on her cellular phone after June 10, 2017 from Defendant. She answered this call and again, the agent asked to speak with Plaintiff's late husband. Plaintiff made another request for the calls to stop.

26.     The calls that Plaintiff received from Defendant caused her emotional distress and increased frustration due to the loss of her late husband.

27.     Neither Plaintiff nor her late husband Joe gave their cellular telephone number to Quicken Loans and had no business relationship with Quicken Loans.

28.     Neither Plaintiff nor her late husband ever consented in writing or otherwise to receive autodialed solicitation telephone calls on their cellular telephone from Quicken Loans.

29.     By placing unauthorized autodialed calls to Plaintiff's cellular telephone as

---

[14] Upon information and belief, when returning calls to these numbers, a prerecorded message identifies the recipient of the call as Quicken Loans. Furthermore, on Quicken Loans' own website, it identifies the -2274 and the -9080 numbers as its own. *See* http://www.quickenloans.com/blog/consumer-alert-beware-companies-posing-quicken-loans and http://www.quickenloans.com/about/contact.

alleged herein, Quicken Loans caused Plaintiff actual, concrete harm and annoyance.

## FACTS SPECIFIC TO PLAINTIFF NORRIS

30.     On January 25, 2011, Norris's residential telephone number was registered on the National Do Not Call Registry for the sole purpose of avoiding solicitation calls.

31.     On or around December 5, 2017, he began to receive a series of unwanted autodialed calls on his residential telephone from Defendant from phone numbers 313-545-0105, 760-524-9171 and 760-524-9172.

32.     On December 5, 2017 at 2:48 p.m. Plaintiff Norris received an autodialed call on his residential line from Defendant using phone number 313-545-0105. There was a pause of silence at the beginning of the call before the agent came on the line. During this call, Plaintiff asked for the calls to stop.

33.     Despite Plaintiff's request for the calls to stop, he received a series of autodialed calls from Defendant. He made additional requests for the calls to stop, but they still continued. As a result, Plaintiff would answer the phone, but then hang up during the periods of silence present at the beginning of each call.

34.     The calls Plaintiff Norris received are as follows:

- December 5, 2017 from 313-545-0105 at 2:48 PM
- December 6, 2017 from 760-524-9172 at 10:08 AM
- December 6, 2017 from 760-524-9171 at 3:37 PM
- December 7, 2017 from 760-524-9171 at 12:13 PM
- December 11, 2017 from 760-524-9172 at 9:55 AM
- December 12, 2017 from 760-524-9172 at 12:45 PM

35.     Plaintiff Norris does not have a relationship with Quicken Loans, or any of its affiliated companies, or has ever requested that Quicken Loans place calls to his landline number. Simply put, Plaintiff has no business relationship with Quicken Loans.

36.     Quicken Loans was aware that autodialed telephone calls were and are being

made to consumers like Plaintiff Pagano who had not consented to receive them and both

Plaintiff Pagano and Plaintiff Norris whose telephone numbers have been registered with the

National Do Not Call Registry.

37.     By making unauthorized autodialed calls to Plaintiff's telephone as alleged

herein, Quicken Loans caused Plaintiff actual, concrete harm and annoyance.

## CLASS ALLEGATIONS

38.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a),

(b)(2), and (b)(3) on behalf of themselves and three Classes defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who from four
> years prior to the filing of the initial complaint in this action to the present: (1)
> Defendant (or a third person acting on behalf of Defendant) called; (2) on the
> person's cellular telephone number; (3) for the purpose of marketing Defendant's
> products and services; and (4) for whom Defendant claims it obtained prior
> express written consent in the same manner as Defendant claims it obtained prior
> express written consent to call Plaintiff Pagano.

> **Autodialed Stop Class**: All persons in the United States from four years prior to
> the filing of this instant action through the present who (1) Defendant (or a third
> person acting on behalf of Defendant) called, (2) on the person's cellular
> telephone, (3) for the purpose of selling Defendant's products and services, (4)
> using an autodialer, (5) after the person informed Defendant that s/he no longer
> wished to receive calls from Defendant.

> **Do Not Call Registry Class**: All persons in the United States who (1) Defendant
> (or a third person acting on behalf of Defendant) called more than one time on
> his/her cellular telephone; (2) within any 12-month period (3) where the cellular
> telephone number had been listed on the National Do Not Call Registry for at
> least thirty days; (4) for the purpose of marketing Defendant's products and
> services; and (5) for whom Defendant claims it obtained prior express consent in
> the same manner as Defendant claims it obtained prior express consent to call
> Plaintiff Pagano and Plaintiff Norris.

39.     The following people are excluded from the Classes: any Judge or Magistrate

presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling

interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs Pagano and Plaintiff Norris both anticipate the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Classes and the manner by which Defendant claims it obtained prior express consent.

40.     **Numerosity:** The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records and by reference to other objective criteria.

41.     **Commonality:** There are several questions of law and fact common to the claims of Plaintiffs Pagano, Norris, and the Classes on which every class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Classes include, without limitation:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically made telephone calls to individuals who did not provide Defendant and/or its agents with their prior express consent to receive such phone calls;

(c)     Whether Defendant made the calls with the use of an ATDS;

(d)    Whether Defendant systematically made multiple telephone calls within the same 12-month period to consumers who telephone numbers were registered with the National Do Not Call Registry; and

(e)    Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

42.    **Typicality**: Plaintiffs Pagano and Norris's claims are typical of the claims of the other members of the Classes. Plaintiff Pagano and Norris are members of the Classes, and if Defendant violated the TCPA to call Plaintiff Pagano then it violated the TCPA to call the other class members. Plaintiff Pagano and Norris and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff Pagano and Norris and the Classes.

43.    **Adequate Representation**: Plaintiffs Pagano and Norris will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions. Plaintiffs Pagano and Norris have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to either Plaintiff Pagano or Norris.

44.    **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs Pagano and Norris challenge of those practices hinges on Defendant's conduct with respect to the Classes as

11

respective wholes, not on facts or law applicable only to Plaintiffs Pagano and Norris.

45. **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express written consent to call and whether Defendant used an ATDS go to the very heart of the case and are facts on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

46. **Superiority and Manageability:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff Pagano and the Autodialed No Consent Class)**

47. Plaintiff Pagano incorporates by reference paragraphs 1-46 as if fully set forth herein.

48.     Defendant placed unsolicited autodialed telephone calls to telephone numbers belonging to Plaintiff Pagano and the other members of the Autodialed No Consent Class— without their prior express written consent.

49.     Defendant's calls were made for the purpose of marketing Defendant's mortgage lending services.

50.     At no time did Defendant obtain prior express written consent that disclosed to the called party that the called party consented to be called with an automatic telephone dialing system or prerecorded voice or that providing such consent was not a condition (direct or indirect) of any purchase of any goods or services.

51.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff Pagano and other members of the Autodialed No Consent Class simultaneously and without human intervention.

52.     By making unsolicited telephone calls to Plaintiff Pagano and members of the Autodialed No Consent Class's cellular telephones without prior express written consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

53.     As a result of Defendant's unlawful conduct, Plaintiff Pagano and the members of the Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

54.     In the event that the Court determines that Defendant's conduct was willful and

knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Pagano and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Pagano and the Autodialed Stop Class)**

55.     Plaintiff Pagano incorporates by reference paragraphs 1-46 as if fully set forth herein.

56.     Defendant made unsolicited and unwanted autodialed calls to telephone numbers belonging to Plaintiff Pagano and the other members of the Autodialed Stop Class on their cellular telephones after they had informed Defendant, orally and/or through the Defendant's automated prompt system, that they no longer wished to receive such calls from Defendant.

57.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

58.     Defendant utilized equipment that made the telephone calls to Plaintiff Pagano and other members of the Autodialed Stop Class simultaneously and without human intervention.

59.     By making unsolicited telephone calls to Plaintiff Pagano and other members of the Autodialed Stop Class's cellular telephones after they requested to no longer receive such calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by doing so without prior express written consent.

60.    As a result of Defendant's unlawful conduct, Plaintiff Pagano and the members of the Autodialed Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Pagano and the other members of the Autodialed Stop Class.

### THIRD CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiffs and Do Not Call Registry Class)**

61.    Plaintiff Pagano incorporates by reference paragraphs 1-46 as if fully set forth herein.

62.    The TCPA, specifically 47 U.S.C. § 227(c), provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

63.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

64.    47 C.F.R. § 64.1200(e), in turn, provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket

No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" (the "Report and Order").

65.    And the Report and Order thereafter states as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[15]

66.    47 C.F.R. § 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the

---

[15] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

67.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple telephone solicitations within a 12-month period to wireless telephone subscribers such as Plaintiffs Pagano and Norris and the Do Not Call Registry Class members, who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

68.     Defendant made more than one unsolicited telephone call to Plaintiffs Pagano and Norris and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff Pagano and Plaintiff Norris and members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

69.     Defendant also violated 47 C.F.R. § 64.1200(d) by initiating calls for

telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff Pagano and Plaintiff Norris and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for having a written policy, available on demand, for maintaining a list of persons who request not to receive telemarketing calls from them, without training its employees or personnel in the use of any such internal do not call list, and in not recording and honoring do not call requests made by consumers.

70.     Defendant further violated 47 U.S.C. § 227(c)(5) because Plaintiff Pagano and Norris and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

71.     As a result of Defendant's conduct as alleged herein, Plaintiffs Pagano and Norris and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiffs Pagano and Norris and the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Jeanne Pagano and Dana Norris individually, and on behalf of the Classes, pray for the following relief:

72.     An order certifying the Classes as defined above, appointing Plaintiffs Jeanne Pagano and Dana Norris as the representative of the Classes and appointing their counsel as Class Counsel;

73. A declaratory judgment declaring that Defendant's calls violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, that Defendant failed to obtain prior express written consent to call Plaintiffs Pagano, or any of the Class members, that Defendant failed to maintain an internal Do Not Call list and to train its personnel engaged in telemarketing in the existence and use of such a list, and that Defendant failed to honor stop-call requests to Plaintiffs Pagano and the members of the Autodialed Stop Call Class;

74. An award of actual and statutory damages, to be trebled in the event the Court finds that Defendant has acted knowingly and willfully, to be paid into a common fund for the benefit of the Class Members;

75. An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, to honor do not call requests, to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

76. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

77. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

78. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA and trained its employees in the existence and use of its internal Do Not Call list;

79. An award of reasonable attorneys' fees and costs to be paid from the common

fund; and

80.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs Pagano and Norris request a trial by jury of all claims that can be so tried.


Date: January 17, 2018

Respectfully submitted,


By: /s/ Manuel S. Hiraldo
Manuel S. Hiraldo (FL 0030380)
mhiraldoathiraldolaw.com
HIRALDO P.A.
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

and

By: /s/Stefan Coleman
Stefan Coleman (0030188)
LawatStefanColeman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd., 28th floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946


*Attorneys for Plaintiffs and the Class*